UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COLLEEN FRANCES LADWIG,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>Defendant. | CASE NO. 2:15-CV-00774-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 7.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the October, 2013 opinion of Plaintiff's treating physician. As a result, the ALJ also may have erred in evaluating Plaintiff's residual functional capacity and

in evaluating Plaintiff's ability to engage in past relevant work at Step Four. Therefore, this matter is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Order.

## **PROCEDURAL& FACTUAL HISTORY**

On February 18, 2009, Plaintiff filed applications for DIB and SSI. *See* Dkt. 12, Administrative Record ("AR") 53. In her applications, Plaintiff alleged she became disabled on August 1, 2008, due to depression, sleep apnea, fibromyalgia, and neck and back pain. *See* AR 53, 66. Plaintiff's applications were denied upon initial administrative review on October 8, 2009, and on reconsideration on June 16, 2010. *See* AR 87-93, 97-101. A hearing was held before an ALJ on September 7, 2011, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 576.

On October 14, 2011, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 28. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 16, 2012, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 6, 20 C.F.R. § 404.981, § 416.1481. On December 27, 2012, Plaintiff filed a complaint in this Court seeking judicial review. *Ladwig v. Colvin*, 2:12-cv-2260-BAT, at Dkt. 1 (W.D. Wa. 2013). On July 26, 2013, the Hon. Brian A. Tsuchida found the ALJ committed harmful error by failing to consider Plaintiff's mental conditions to be medically determinable impairments, and failing to find those same impairments "severe." AR 660-66. Judge Tsuchida entered an order reversing and remanding the case to "reevaluate Ms. Ladwig's mental impairments at step two, reassess Ms. Ladwig's credibility as to her mental limitations, and proceed to the remaining steps in the disability determination evaluation process as

appropriate." *Id.* [1] Judge Tsuchida also instructed the ALJ to "develop the record as needed[.]" *Id.*

A second hearing was held before the ALJ on November 5, 2014, and the ALJ issued a new decision on January 20, 2015, again finding Plaintiff was not disabled within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 659, 1465. Plaintiff filed this action on May 18, 2015.

Plaintiff argues the ALJ erred by: (1) giving little weight to the two opinions of Plaintiff's treating physician, Dr. Sharon Osea; and (2) failing to incorporate all of Plaintiff's credible limitations into her residual functional capacity, resulting in an erroneous finding at Step Four of the sequential evaluation. Dkt. 13, p. 1.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

**DISCUSSION**

I.  Whether the ALJ Properly Evaluated the Two Opinions of Sharon Osea, M.D.

---

[1] Plaintiff has not challenged the ALJ's resolution of these issues on remand. Based on the Court's review of the ALJ's decision and the whole record, the ALJ properly addressed each of the issues raised in Judge Tsuchida's Order. Plaintiff's assignments of error in this action concern medical opinions post-dating the Commissioner's November 16, 2012 decision.

Plaintiff argues the ALJ erred by giving little weight to the medical opinions of Plaintiff's treating physician, Dr. Sharon Osea.

### A. Standard

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But, when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751).

Plaintiff contends the ALJ was required to offer clear and convincing reasons for rejecting Dr. Osea's opinions. *See* Dkt. 13, pp. 6, 8. But, Dr. Osea's opinions were contradicted by the opinions of Debra Stocker and Dr. Robert Hoskins. *See* AR 246-253, 291.[2] The ALJ gave great weigh to these opinions, and found they were consistent with the objective medical evidence, Plaintiff's activities of daily living, the Plaintiff's testimony at the hearing, and the

---

[2] Plaintiff, citing to Program Operations Manual System ("POMS") DI 24510.050, argues Debra Stocker rendered her opinion as a Single Decisionmaker ("SDM") rather than as a medical consultant; therefore, she should not have been treated as an acceptable medical source by the ALJ and her opinion should not have been considered. However, Ms. Stocker's opinion was subsequently ratified by Dr. Hoskins as his medical opinion. AR 291. Non-physicians, such as physician's assistants or nurses, can render opinions which are subsequently ratified by a doctor without compromising the validity of the doctor's status as an acceptable medical source. *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); *see also Xiong v. Astrue*, 2010 WL 3715135, *5-*6 (E.D. Ca. 2010).

record as a whole. AR 654. Thus, the ALJ was only required to provide specific and legitimate reasons for discounting Dr. Osea's opinions. *See Lester,* 81 F.3d at 830-31; *Magallanes*, 881 F.2d at 751-55.

In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

### B. Application of Standard

Dr. Osea provided opinions concerning Plaintiff's alleged disability on two occasions. On October 1, 2013, Dr. Osea completed a form titled "medical statement regarding physical abilities and limitations." AR 1188. Five months later, on February 19, 2014, Dr. Osea completed a "physical function exam" form provided by the Washington State Department of Social and Health Services ("DSHS"). AR 1125. On both forms, Dr. Osea provided her opinions concerning Plaintiff's various exertional and postural limitations, as well as the expected impact Plaintiff's conditions would have on her ability to work.

*1. Dr. Osea's February, 2014 Opinion*

On February 19, 2014, Dr. Osea opined Plaintiff would be unable to perform any of the following work-related activities due to her chronic neck and back pain and associated radiculopathy: sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. AR 1125-27. Dr. Osea also opined these limitations would persist for at

least twelve to twenty-four months. *Id.* The ALJ discounted Dr. Osea's February, 2014 opinion for the following reasons:

> I give little weight to Dr. Osea's February 2014 opinion here because it was formed at a time when the claimant was yet to receive another neck surgery [AR 1127] and treatment records indicate that the claimant's neck and back are generally not as limited as opined Dr. Osea [sic] (see [AR 724 and 731]). For instance, in May 2013, Dr. Osea said the claimant demonstrates a good range of motion of her neck, and the claimant reported regularly riding a horse and walking for miles. [AR 1178-79]. In February 2014 and March 2014, Dr. Osea also noted that despite the reported pain, the claimant reported ability to perform activities of daily living and showed normal gait, and only mild to moderately limited range of motion of her neck and back [AR 1118, and 1120-21; and 1361]. Later, in July 2014, the claimant underwent the neck surgery [AR 1325]. However, in September 2014, the claimant's posterior neck incision is already well healed with no swelling or subjective weakness in the limb. Furthermore, the claimant demonstrated intact sensation, and five out of five grip strength, and strength in deltoids biceps, and triceps bilaterally. Jenna Beh, PA-C, opined that the claimant continues to make steady progress and her recovery following surgery is within normal limits [AR 1424 and 1426]. Dr. Osea's opinion is not well supported or consistent with other substantial evidence. At the current hearing, the claimant testified that, since the surgery, she has been getting help with chores from a caretaker and getting special [sic] table and chair at school. Nonetheless, she also stated that she drives short distance, attends nurse assistant classes with other students three days a week, and sees her counselor twice a week. These activities further indicate that she has been recovering well from the surgery.

AR 654-55. Plaintiff argues none of these reasons are sufficient to reject the opinion of a treating physician; instead, Plaintiff contends the ALJ should have fully credited Dr. Osea's February, 2014 opinion. The Court disagrees.

The ALJ provided several specific and legitimate reasons for discounting Dr. Osea's February, 2014 opinion. For example, Plaintiff engaged in numerous physical activities in 2013 and 2014, including riding horses, walking at least one mile three times per day, attending nurse assistant classes (which included hands-on training), and driving, which are inconsistent with Dr. Osea's opinion that Plaintiff is unable to sit, stand, or walk. *See* AR 1178, 1492. Inconsistency with a claimant's activities is a specific and legitimate reason for discounting a medical opinion.

*See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Also, Plaintiff underwent a foraminotomy on her cervical spine shortly after Dr. Osea rendered her February, 2014 opinion. AR 1325. The improvements in her condition within several months of the surgery are documented in the record, and subsequent developments in a claimant's medical and treatment history can undermine a previous medical conclusion. AR 1426, 1481. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant has burden of proving he or she suffers from medically determinable impairment that can be expected to last for a continuous period of not less than twelve months). Finally, the ALJ cites several records contemporaneous to Dr. Osea's opinions indicating Plaintiff was less limited than Dr. Osea opined. AR 724, 731, 1118, 1120-21, 1178-79, 1361. The consistency of a medical opinion with the whole record is an important factor in weighing a medical opinion's credibility, and the ALJ reasonably did so here. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).[3] These reasons were supported by substantial evidence, and the ALJ did not err by discounting Dr. Osea's February, 2014 opinion.

## 2. Dr. Osea's October, 2013 Opinion

On October 1, 2013, Dr. Osea opined Plaintiff would be able to work no more than two hours per eight-hour work day, stand for no more than two hours per eight-hour work day, sit for

---

[3] Plaintiff argues some of the records cited by the ALJ also reflect the Plaintiff had cervical spasms during examinations, and also observes other contemporaneous records not explicitly cited by the ALJ demonstrated non-fusion at C5-6 as well as C5-6 radiculopathy. AR 1121, 1335, 1337, 1343, 1361, 1369, 1383. Plaintiff contends this calls into question the ALJ's use of the medical records as a whole to discredit Dr. Osea's opinion. Even assuming the ALJ's failure to explicitly consider these items in his discussion of Dr. Osea's opinion was error, in light of the ALJ's other valid reasons for discounting Dr. Osea's February 2014 opinion discussed above, any such error would be harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless "so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion.").

no more than one hour per eight hour work day, lift or carry no more than five pounds on a frequent basis, reach over her right shoulder on a seldom basis and over her left shoulder on an occasional basis, and opined Plaintiff's impairments would cause her to miss more than three workdays per month. AR 1188-89. Importantly, unlike her February, 2014 opinion, Dr. Osea's October, 2013 opinion did not suggest Plaintiff would be categorically unable to perform most exertional activities.

The ALJ also gave Dr. Osea's October, 2013 opinion little weight, but only provided one reason for doing so: "it conflicts with the claimant's school attendance that she is currently being paid to attend. It is not realistic to believe claimant would be funded for training for a job that she is physically or mentally incapable of performing." AR 655. The Commissioner tacitly concedes this was not a specific and legitimate reason for discounting Dr. Osea's October, 2013 opinion. Dkt. 14, p. 5. Instead, the Commissioner argues any such error was harmless as Dr. Osea's two opinions were "substantially similar," and the ALJ's reasons for discrediting the February, 2014 opinion would apply equally well to the October, 2013 opinion. The Court disagrees.

Dr. Osea's October, 2013 opinion reflects fewer and less-severe limitations and restrictions than Dr. Osea opined to in her February, 2014 opinion. While Dr. Osea opined in February, 2014 that Plaintiff would be effectively unable to sit, stand, reach, handle, or lift for at least twelve to twenty-four months, Dr. Osea's October, 2013 opinion actually reflected Plaintiff would be able to perform those activities to varying degrees—though still at levels indicating Plaintiff was disabled. AR 1125-27, 1188-89. Dr. Osea's October, 2013 opinion, further, does not indicate whether and to what degree Plaintiff is limited in her ability to walk, stoop, and crouch, nor does it indicate the expected duration of any opined limitations. AR 1188-89. Given these differences, the evidence cited by the ALJ to discount Dr. Osea's February, 2014 opinion is

1  not necessarily inconsistent with Dr. Osea's October, 2013 opinion that Plaintiff would have

2  some partial, though extensive, exertional limitations. For example, Plaintiff's activities, such as

3  horseback riding for ten minutes at a time, or walking several miles a day, are not necessarily

4  inconsistent with Dr. Osea's October, 2013 opinion, as this opinion states Plaintiff would be able

5  to sit for at least one hour in an eight-hour workday, and does not reference Plaintiff would be

6  unable to walk.  Further, while the record demonstrates Plaintiff's condition improved several

7  months after surgery, Dr. Osea's October, 2013 opinion is not necessarily inconsistent with

8  Plaintiff's post-surgical improvements. Thus, contrary to the Commissioner's argument, the

9  ALJ's reasons for discrediting Dr. Osea's February, 2014 opinion do not apply equally well to

10 Dr. Osea's October, 2013 opinion, and the ALJ's failure to articulate specific and legitimate

11 reasons for discrediting Dr. Osea's October, 2013 opinion was harmful error requiring remand.

12        II.        Whether the ALJ Properly Evaluated Plaintiff's Residual Functional Capacity

13        Plaintiff argues the ALJ erred at Step Four by finding Plaintiff was capable of performing

14 past relevant work. Specifically, Plaintiff argues the ALJ's failure to properly credit Dr. Osea's

15 opinions led the ALJ to find Plaintiff had the residual functional capacity to perform the full

16 range of light work, subject to certain non-exertional, mental limitations. AR 646. Plaintiff

17 argues this error, in turn, led to an improper hypothetical question to the vocational expert,

18 leading the ALJ to conclude Plaintiff was capable of performing her past relevant work.

19        Plaintiff, not the Commissioner, has the burden at step four of the disability evaluation

20 process to show that she is unable to return to her past relevant work. *Tackett v. Apfel*, 180 F.3d

21 1094, 1098-99 (9th Cir. 1999). The hypothetical questions posed by the ALJ to the vocational

22 expert at the hearing have no bearing on the ALJ's findings at Step Four, as the ALJ does not

23

24

need to support a Step Four finding with vocational expert testimony. *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).

However, "although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. . . . This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work." *Pinto v. Massanari*, 249 F.3d 850, 844-45 (9th Cir. 2001) (quoting 20 C.F.R. §§ 404.1520(e) and 416.920(e)) (citing 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965). In this case, the ALJ specifically found Plaintiff's past relevant work as an accounting clerk, chauffer, caterer director, and travel agent "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." AR 659. But, as discussed above, the ALJ failed to properly evaluate Dr. Osea's October, 2013 opinion, and, as a result, may have also erred in determining Plaintiff's residual functional capacity. An ALJ's failure to properly evaluate all of the medical opinion evidence may result in a flawed residual functional capacity finding. *See* Social Security Ruling ("SSR") 96-8-p, 1996 WL 374184 at *2. As the ALJ's Step Four findings might be predicated on a flawed residual functional capacity finding, the ALJ will need to revisit the Step Four finding on remand.

  III. <u>Whether the Case Should be Remanded for an Award of Benefits or Further Proceedings</u>

Plaintiff argues Dr. Osea's opinions should be credited as true and the case remanded for the award of benefits, rather than for further proceedings.

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)

(citations omitted). However, the Ninth Circuit has established a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). This test, often referred to as the "credit-as-true" rule, allows a court to direct an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178 (*quoting Smolen*, 80 F.3d at 1292). *See also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). Nonetheless, an ALJ's errors are relevant only to the extent they impact the underlying question of the Plaintiff's disability. *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005)). Therefore, even if the credit-as-true conditions are satisfied, a court should nonetheless remand the case if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2004)).

Here, outstanding issues must be resolved. Even if it were fully credited, Dr. Osea's October, 2013 opinion conflicts with the opinions of Ms. Stocker and Dr. Hoskins, which the ALJ had given significant weight. AR 246-253, 291. Therefore, the case should be remanded for additional proceedings, rather than for the calculation of benefits.

## **CONCLUSION**

Based on the above stated reasons and the relevant record, the undersigned finds the ALJ erred by failing to properly evaluate Dr. Osea's October, 2013 opinion, failing to properly evaluate

1 | Plaintiff's residual functional capacity and Plaintiff's ability to engage in past relevant work at Step
2 | Four. Therefore, the court ORDERS this matter be REVERSED and REMANDED pursuant to
3 | sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate Dr. Osea's October,
4 | 2013 opinion and reweigh all of the medical opinion evidence, reevaluate Plaintiff's residual
5 | functional capacity, and proceed on to Step Four and/or Step Five of the sequential evaluation, as
6 | appropriate. On remand, the ALJ should also develop the record as needed. Judgment should be for
7 | PLAINTIFF and the case should be closed.

    Dated this 27th day of October, 2015.

/s/ David W. Christel
David W. Christel
United States Magistrate Judge